GENERAL TIRE, INC., Appellant,

v.

Kenneth KEPPLE, As Next Friend of Kyle E. Kepple, Robert A. Ross, Robert and Glenda Cammack, Christopher Thompson, Golden Rule Insurance Company, Jill Mock Nevil, Trial Lawyers for Public Justice, P.C. Jessie Clark, Farie Clark, Joyce Houston, Miriam Penny, Michael Hauser, Public Citizen Center for Auto Safety, Appellees.

No. 14–94–01166–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 22, 1996.

Rehearing Overruled March 28, 1996.

Dissenting Opinion on Overruling of Rehearing March 28, 1996.

Lynne Liberato, Houston, Douglas T. Gosda, Houston, Jeffrey Castro, Akron, Ohio, Alene Ross Levy, Houston, for appellant.

Russell L. Cook, Houston, David W. Holman, Houston, for appellees.

Before LEE, AMIDEI and EDELMAN, JJ.

## OPINION

LEE, Justice.

General Tire, Inc. appeals a determination by the trial court that documents presented during discovery are not entitled to protection under rules of civil procedure 166b or 76a. General Tire brings six points of error challenging the court's interpretation of the rules, the sufficiency of the evidence and the constitutionality of rule 76a. We affirm.

Kyle Kepple, through his next friend, Kenneth Kepple, and others sued General Tire and Ford Motor Company alleging that tires manufactured by General Tire were defective causing tread separation and contributing to a rollover of a Ford Bronco II. The rollover rendered Kepple incompetent and quadriplegic.

During discovery, numerous documents were produced by General Tire and depositions of their personnel were taken pursuant to a rule 166b interim protective order issued in January 1994. During a March 1994 pretrial hearing on various discovery motions,

the trial court indicated that General Tire should move to seal the documents under rule 76a. A week later, April 4, 1994, General Tire filed a motion to retain the January protective order or, alternatively, to temporarily seal the documents under rule 76a. The court had not ruled on the motion when the parties settled. Consequently, General Tire allowed the motion to pass without obtaining a ruling from the court. In June, pursuant to the settlement, the court dismissed the suit against General Tire, with prejudice.

Kepple's trial counsel was aware of an attorney in Georgia who had a grievance action and two show cause motions filed against him for failure to comply with a protective order in a substantially similar case involving General Tire and Ford. To avoid similar difficulties in this case, in August, Kepple's trial counsel moved for relief from the January protective order issued in this case. On September 19, 1994, the court granted Kepple relief from the protective order and set it aside as "null and void." General Tire immediately responded and requested a hearing on its April motion for retention of the January protective order or temporary sealing. On September 21, the court denied General Tire's request for a protective order, but granted, in part, its temporary sealing order and set a rule 76a hearing to determine if the documents should be sealed.

General Tire filed another motion for protection under rule 166b or, alternatively, sealing under rule 76a. A full rule 76a hearing was noticed and held in November. At this hearing, both parties presented expert testimony and tendered numerous documents for the court to review *in camera*. The documents tendered by General Tire were produced by them in the discovery of this case while the documents tendered by Kepple were General Tire documents initially produced during an earlier suit with a different plaintiff (*Benson* documents).[1] In addition to the parties to the litigation, several parties intervened and appeared. See Tex.

R.Civ.P. 76a(3). After hearing substantial testimony, the court determined that all the documents were "court records" and, thus, subject to the rule. *See* Tex.R.Civ.P. 76a(2). The court then proceeded on General Tire's alternative rule 76a request to seal the documents. General Tire presented additional testimony and reoffered its earlier evidence in support of sealing the documents. The following day, the court issued an order which found that:

1. rule 166b requires compliance with rule 76a when a party attempts to limit the distribution of documents obtained during discovery;

2. the unfiled discovery documents were court records because they contained matters that "have a probable adverse effect on the general public health or safety or the administration of public office or the operation of government;" and

3. General Tire failed to demonstrate that the documents should not be open to the public.

In its first point of error, General Tire argues that the trial court erred in holding that rule 76a procedures applied to its request for limited protection under rule 166b. Rule 166b authorizes a trial court to enter a protective order when good cause is shown to protect the results of discovery. The court may order that discovery "be sealed or otherwise adequately protected, that its distribution be limited, or that its disclosure be restricted." Tex.R.Civ.P. 166b. However, rule 166b also states that any protection of the results of discovery "shall be made in accordance with the provisions of Rule 76a with respect to all court records subject to that rule." *Id.* Thus, in a fairly straightforward application of the two rules, this court held in *Ford Motor Co. v. Benson*, 846 S.W.2d 487 (Tex.App.—Houston [14th Dist.] 1993, writ dism'd as moot), that rule 76a applies to "court records" while rule 166b does not. *Id.* at 490–91; *see also Upjohn Co. v. Freeman*, 906 S.W.2d 92 (Tex.App.—Dallas 1995, no writ) (*Upjohn III*) (trial court

---

1. *See Ford Motor Co. v. Benson*, 846 S.W.2d 487 (Tex.App.—Houston [14th Dist.] 1993, writ dism'd as moot). Benson and Kepple were represented by the same attorney and both suits involved injuries sustained in a Ford Bronco II rollover.

cannot presume that the results of discovery are court records; if a party contests the issue, the trial court must determine if documents are court records). Thus, when a trial court is presented with a request for protection under rule 166b, it is to proceed without regard to rule 76a until the non-movant alleges and establishes that the documents are "court records." The burden of proof is then on the non-movant in the rule 166b proceeding to show that the documents sought to be protected include "court records" and, therefore, fall within rule 76a. *Benson,* 846 S.W.2d at 491; *see also Eli Lilly and Co. v. Biffle,* 868 S.W.2d 806, 808 (Tex.App.—Dallas 1993, no writ) (if a party raises an issue whether documents are "court records," the burden is on the party attempting to "receive the benefit of the presumption of openness"). Therefore, if Kepple carried his burden and the documents were "court records," then the court did not err in applying rule 76a rather than rule 166b.

In General Tire's second point of error, it contends that there was either no evidence or insufficient evidence to support the trial court's determination that the documents were "court records." In order to address General Tire's contention, we must initially determine the appropriate standard of review applicable to rule 76a motions.

■ As the Texarkana court recently discussed, there is some confusion among the courts of appeals whether to apply an abuse of discretion or sufficiency of the evidence standard of review. *See Burlington N. R.R. Co. v. Southwestern Elec. Power Co.,* 905 S.W.2d 683, 686 (Tex.App.—Texarkana 1995, no writ). The Dallas, Eastland and Beaumont courts have applied the abuse of discretion standard, while the San Antonio court and former supreme court justice Lloyd Doggett, urge that sufficiency of the evidence is the appropriate standard. *Compare Upjohn III,* 906 S.W.2d at 95 *and Boardman v. Elm Block Dev. Ltd. Partnership,* 872 S.W.2d 297, 299 (Tex.App.—Eastland 1994, no writ) *and Upjohn Co. v. Freeman,* 847 S.W.2d 589, 590 (Tex.App.—Dallas 1992, no writ) (*Upjohn I*) *and Dunshie v. General Motors Corp.,* 822 S.W.2d 345, 347 (Tex.App.—Beaumont 1992, no writ) *with Fox v. Anonymous,* 869 S.W.2d 499, 505 (Tex.App.—San Antonio 1993, writ denied) *and* Lloyd Doggett & Michael Muccheti, *Public Access to Public Courts: Discouraging Secrecy in the Public Interest,* 69 Tex.L.Rev. 643, 683 (1991). Because we generally apply an abuse of discretion standard when reviewing the application of the rules of civil procedure, we adopt the standard used by the Dallas, Eastland and Beaumont courts. *See Remington Arms Co. v. Canales,* 837 S.W.2d 624 (Tex.1992) (orig. proceeding); *Walker v. Packer,* 827 S.W.2d 833 (Tex.1992) (orig. proceeding); *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986); *Davis v. Huey,* 571 S.W.2d 859 (Tex.1978).

■ A trial court abuses its discretion when it acts without reference to any guiding rules or principles, or acts in an arbitrary or unreasonable manner. *Downer,* 701 S.W.2d at 241–42; *Upjohn III,* 906 S.W.2d at 95. Rule 76a provides the guiding rules and principles for sealing court records. *Upjohn III,* 906 S.W.2d at 95; *Dunshie,* 822 S.W.2d at 347. "An abuse of discretion does not exist where the trial court bases its decisions on conflicting evidence." *Davis,* 571 S.W.2d at 862. We may not disturb the trial court's decision unless it is arbitrary and unreasonable. *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 918 (Tex.1985) (orig. proceeding). Nor may we substitute our judgment for that of the trial court. *Flores v. Fourth Court of Appeals,* 777 S.W.2d 38, 41–42 (Tex.1989) (orig. proceeding). In a nonjury trial or hearing, the trial judge is the sole judge of the witnesses' credibility and the weight given their testimony. *Tate v. Commodore County Mut. Ins. Co.,* 767 S.W.2d 219, 224 (Tex.App.—Dallas 1989, writ denied).

"Court records" includes unfiled discovery that concerns "matters that have a probable adverse effect upon the general public health or safety." Tex.R.Civ.P. 76a(2)(c). Rule 76a provides that the trial court may use the procedures prescribed by rule 120a(3) to determine a motion to seal. Tex.R.Civ.P. 76a(4); *Boardman,* 872 S.W.2d at 299. Rule 120a provides that a court is to determine a special appearance based on the pleadings,

stipulations, affidavits, discovery and oral testimony presented by the parties. TEX. R.CIV.P. 120a. Thus, we are to review these various forms of evidence to determine whether the trial court abused its discretion in determining that the documents were court records.

Because General Tire sought only a protective order and was the movant, it presented evidence first. Its evidence consisted of the oral testimony of its expert witness, Tom Lee, and the affidavits of Dean Charles, Jeffery Miller, Robert French, and Ronald Forsyth. General Tire divided the documents into seven general categories:

1. cured tire standards;
2. specification revisions;
3. product change proposals;
4. testing;
5. mold drawings;
6. adjustment data; and
7. miscellaneous documents including consumer inquiries, record retention schedules and Ford tire release.

Lee testified about each category of documents and stated why each dealt with its production and customer service process and did not concern the public health and safety. He stated that the documents were very technical and would provide very little information to a non-expert. He stated the best way to determine why a tire failed, even for an expert, was to examine the tire. In addition, Lee stated that the tire adjustment data originally furnished to Kepple contained erroneous calculations. This "flawed" data was contained in exhibit 10 while the correct information was in exhibits 8 and 9. He testified that the erroneous calculations were the result of computer reporting and configuration defects.

By way of affidavit, Charles indicated how adjustment data was compiled and used by Uniroyal. He stated that it was primarily a marketing tool where the manufacturer would give a consumer a new tire for most any defect or problem with the tire, including cosmetic blemishes. He also stated that release of this information would give competitors a marketing and technological advantage because this information is not otherwise available.

Miller was a former administrator at the National Highway Traffic Safety Administration (NHTSA). Some of the documents in this case were submitted to NHTSA's Office of Defects Investigation (ODI). In Miller's opinion, these documents were of the type generally recognized by NHTSA as trade secrets and proprietary. As a result, NHTSA generally does not allow release of this information to the public. He reasoned that because NHTSA is charged with enhancing traffic safety and because these documents are generally granted confidentiality, they do not present a risk to the public. In addition, ODI closed its preliminary evaluation of General Tire. Miller stated that implicit in this decision was "ODI's opinion that nothing in these documents or other information sources would suggest the presence of an unreasonable risk to motor vehicle safety."

French was a former Firestone employee and technical advisor. He represented that Firestone considered its tire designs and specifications, testing results, mold drawings and adjustment data proprietary and commercially sensitive. He also stated that it was his understanding that when this information was given to NHTSA, it was given confidential status.

Forsyth was a current General Tire manager who explained General Tire's compilation and use of adjustment data. He represented that General Tire also considered the information proprietary and commercially sensitive.

After Lee completed his in-court oral testimony, Kepple presented evidence in support of his argument that the documents were "court records." He presented affidavits from Dr. Melvin Richardson, Lance Cooper and John Parker; oral testimony of George Edwards and Dennis Carlson; and deposition testimony of Joe Guardalabene, James Shelgosh and Glenn Shepard.

Richardson stated in his affidavit that he had investigated six substantially similar accidents involving General Tire tread separations. He opined that "General Tires are

indeed a public safety hazard. Any information that the public could receive with regard to this situation would be beneficial to the public good."

Similarly, Cooper and Parker filed affidavits stating their opinion that the discovery in this case "concerns matters that have a probable adverse effect upon the general public health and safety." Both Cooper and Parker were attorneys representing plaintiffs which were allegedly injured by General Tire tread separation. In both cases, General Tire denied having historical information about the failure rate of its tires in responses to discovery requests. In both cases, the attorneys later discovered that the information was available when requested and had not been produced.

Edwards testified that for the last fifteen years he had investigated tire failures. During the seven most recent years, he had investigated several General Tire failures which involved Ford Bronco IIs. He testified that he reviewed the adjustment data in this case and that in his opinion the information affected public safety because there was "an extraordinary amount of tread separations." He testified that tire manufactures "know they're in trouble" when the adjustment rate is over one and a half percent (1½ %). Exhibit 10 indicated that for several months the adjustment rate was in excess of twenty percent (20%) and in some months the rate was in excess of forty-seven percent (47%). When confronted with this information, Edwards testified that it was "critically important" that the figures be made public. Edwards concluded his direct testimony with the following:

Q. Based on your experience, have you ever seen adjustment records with as high of figures as some of the months shown in the Exhibit No., Hearing Exhibit No. 10?

A. It is possible that Firestone 500, who recalled 14 million of them, reached this size. I don't recall the exact figures; but I looked at a lot of adjustment records, and they were very high, too. This is the same category.

Q. Since the Firestone 500, have you seen anything approaching some of the figures shown in Kepple Exhibit No. 10?

A. No.

During cross-examination, Edwards admitted there were numerous reasons why a tire might appear in the adjustment data. Some of those reasons do not have any relationship to the quality of the tire or if the tire contains a defect. For example, a tire might appear in the adjustment data for under or over inflation, mismatched size and being overloaded. Edwards also admitted that the "grand total" of the adjustment amounts was 0.8%, but he did not know what that meant or included.

Carlson was also a tire failure analysis expert who testified on behalf of Kepple. He testified that sealing the documents would adversely affect the public safety and that General Tire would not be harmed by the release of the information. Like Edwards, Carlson testified that the adjustment return amounts were "extremely high." He also stated that the variations from month to month would be important to public safety because, when read with some of the other documents, they indicate changes in the components of the tire. This information could lead to a determination of what causes problems with the tires. In addition, he stated that he "could not understand" Lee's and Charles' testimony that the adjustment data was primarily marketing information. He felt that it was useful information about the safety of the tires. Finally, he stated that some of the information that Lee and Carlson said was proprietary about the documents was currently available in trade publications such as *Auto Week* and *Rubber News*.

The depositions of Guardalabene and Shelgosh were taken in *Benson*, while the deposition of Shepard was taken in this case. Each deposition was offered to rebut portions of Lee's testimony.

General Tire argues that Kepple did not present any evidence that the documents contained information about "matters that have a probable adverse effect upon the general public health or safety." Instead, General Tire asserts that Kepple's experts relied on the tires themselves and not the documents in issue, relied on flawed data or made mere conclusions about the records without

reference to specific parts of the documents. We disagree.

■ The major thrust of General Tire's argument focuses on Lee's testimony that the data contained in exhibit 10 was incorrect while the correct adjustment data was contained in exhibits 8 and 9. The trial court was free to believe or disbelieve Lee's testimony. *Upjohn III,* 906 S.W.2d at 95. In addition, a review of the exhibits indicates that exhibits 8 and 9 only contain a summary of the information contained in exhibit 10. Exhibit 10 contained a month by month analysis of the adjustment information by adjustment code. On the other hand, exhibit 8 and 9 only indicate the total adjustments for all conditions for 1985 through 1988. The month by month analysis and the various adjustment codes were considered important by Kepple's experts in their evaluation of the information. A trial court does not abuse its discretion when it bases its decision on conflicting evidence. *Davis,* 571 S.W.2d at 859. We may not substitute our judgment for that of the trial court, even if we might reach a different conclusion on the evidence presented. *Id.; Upjohn III,* 906 S.W.2d at 95.

Also in support of its second point of error, General Tire contends that the trial court applied the wrong standard when determining that the documents were court records. It argues that the court found that the documents *might* contain information related to public safety. It contends that the "speculative nature" of the court's order demonstrates that the court applied the wrong standard in that it did not find that the documents contained information about "matters that have a probable adverse effect upon the general public health or safety." *See* Tex. R.Civ.P. 76a(2)(c). General Tire appears to be complaining of the following portion of the court's order:

> After hearing extensive evidence, the court finds that the documents the subject of this motion are court records and [sic] because the information contained therein **may be** evidence of a defect in the design or manufacture of the tires, and therefore the limitation of access **would have a probable adverse effect upon the general public health or safety** (emphasis added).

This statement was contained on the third page of the court's order. On the second page of the order, as stated in the recitation of the facts above, the court found that the documents were court records. The language complained of by General Tire also clearly states that the court found the documents to be court records. The court supported this finding with a statement that it reached this conclusion because the limitation of information about **possible** defects **would** have a probable adverse effect on the general public health or safety. Contrary to General Tire's assertion, the "speculative" language used by the trial court related to the design defects, not the effect on the public health or safety. When the order is read in its entirety, the court clearly found that the documents were court records.

We have reviewed the evidence presented by both the parties and have determined that it was not an abuse of discretion for the trial court to determine that the documents were "court records." The court did not act arbitrarily or unreasonably. Rather, the court based its decision on the evidence presented and correctly applied the law to the facts. *See Golden Rule Ins. Co. v. Harper,* 905 S.W.2d 804, 806 (Tex.App.—Houston [14th Dist.] 1995, writ requested). In addition, the court applied the correct standard in reaching this decision. Because we find that the trial court was within its discretion in finding that the documents were "court records," we also find that it did not err in applying rule 76a procedures to General Tire's request for limited protection. Accordingly, we overrule General Tire's first and second points of error.

■ In its third point of error, General Tire contends that the trial court's finding that the documents are not worthy of sealing is against the great weight and preponderance of the evidence. As indicated above, despite General Tire's argument to the contrary, we will apply the abuse of discretion standard to review the trial court's determination.

■ Under rule 76a(1) "court records" are presumed to be open to the general

public unless a party rebuts this presumption of openness by proving:

    (a) a specific, serious and substantial interest which clearly outweighs:

        (1) this presumption of openness; [and]

        (2) any probable adverse effect that sealing will have upon the general public health or safety; [and]

    (b) no less restrictive means than sealing records will adequately and effectively protect the specific interest asserted.

TEX.R.CIV.P. 76a; *Biffle,* 868 S.W.2d at 809. The party moving for the sealing order has the burden to prove by a preponderance of the evidence that these elements of rule 76a have been met. *Biffle,* 868 S.W.2d at 809; *Upjohn I,* 847 S.W.2d at 591.

In an attempt to carry its burden of proof, General Tire elicited testimony from an engineering failure analysis consultant, Stephen Winder. Winder testified that statistically a person was less likely to die from a tire separation that from numerous other activities. He opined that, in general, tires are safe. General Tire also resubmitted its evidence produced in conjunction with the trial court's initial court record determination.

■■■■■ General Tire argues that it conclusively established that the documents were trade secrets which were deserving of protection. A properly proven trade secret interest **may** constitute a specific, serious, and substantial interest, which would justify restricting access to the documents. *See Eli Lilly & Co. v. Marshall,* 829 S.W.2d 157, 158 (Tex.1992) (orig. proceeding) (per curiam). However, when determining whether to seal court records, the court is called upon to balance the presumption of openness and the probable adverse effect on the general public health and safety against the interest the movant has in sealing the documents. Only when the interests in favor of sealing **clearly** outweigh the presumption of openness and public interests may a court seal documents. *See* TEX.R.CIV.P. 76a(1)(a). General Tire presented substantial evidence that the documents were trade secrets which they and other companies considered proprietary and commercially sensitive. Kepple, however, presented contrary evidence that General

Tire would not be harmed by this information being released to the public. We cannot say that General Tire **clearly** established that its interests outweighed the public interests simply because the documents contained what it considered to be trade secrets. The trial court was presented with conflicting evidence. It was within its discretion in finding that the presumption of openness should remain undisturbed in this situation. We overrule General Tire's third point of error.

■■■ In its fourth point of error, General Tire argues that the trial court erred in holding a rule 76a public hearing before it determined if the documents were court records. While better practice might be to have separate hearings, it is not error in this case. Our opinion in *Benson* can be read to have envisioned that separate hearings would be held. *See Benson,* 846 S.W.2d at 490–91. No doubt, had the trial court reached a different result, General Tire's interests could have been compromised. However, because the trial court decided that the documents were court records, the documents inevitably would have been discussed in open court with the potential for interveners to be present. In fact, throughout the hearing, the parties carefully avoided discussing the details of the documents, but rather discussed generally what the documents contained and whether that information had an adverse effect on the public safety. Any error in failing to have a separate hearing to determine if the documents were court records was not reasonably calculated to cause and probably did cause the rendition of an improper judgment nor was General Tire prevented from properly presenting its case. *See* TEX.R.APP.P. 81(b)(1); *Texas Dep't of Human Servs. v. White,* 817 S.W.2d 62, 63 (Tex.1991) (per curiam). Accordingly, any error is not reversible and we overrule the fourth point of error.

General Tire next asserts that the trial court erred when it purported to include *Benson* documents in its order denying General Tire's motion to seal. Benson was represented by the same trial counsel as Kepple. In *Benson,* Judge Cochran entered a protective order which allowed the information to be used in the case, but did not allow unlimit-

ed dissemination. In conjunction with this case, Kepple requested many of the same documents that were discovered in *Benson.* At the March pretrial hearing, General Tire objected to these requests as burdensome because it did not "see why [it would] have to produce it twice." In response to General Tire's objection, the court and the attorneys had the following conversation:

[Kepple's Counsel]: As long as we have that on the record, that I can use it, I don't have any problem.

[General Tire's Counsel]: I'm not admitting it's admissible.

THE COURT: But there is not going to be a claim that it is not admissible because it was obtained in another lawsuit.

[General Tire's Counsel]: The objections will be obviously relevance, hearsay, all the standard objections.

\*    \*    \*    \*    \*    \*

THE COURT: So, you have already got that and there is an understanding that if it were admissible, you can use whatever it is you have already received in another lawsuit.

Based on this discussion and its ruling, the trial court determined that the *"Benson* documents" were also produced in this case. When the parties appeared for the rule 76a hearing, Kepple "out of an abundance of caution" tendered two boxes of *Benson* discovery for *in camera* inspection by the trial court. The boxes contained *Benson* documents which were also produced in this case and some depositions from *Benson.*

General Tire initially contends that the trial court did not have jurisdiction to vacate the protective order issued by Judge Cochran in *Benson.* It argues that the documents were protected by Judge Cochran's order and that the trial court could not vacate an order by a court of co-ordinate jurisdiction.

*See Cleveland v. Ward,* 116 Tex. 1, 285 S.W. 1063, 1071 (1926). This argument, however, overlooks the fact that these documents were also discovered in this case and became part of the court's jurisdiction as a result. If Kepple had been represented by different trial counsel, General Tire could not have been relieved of the "burden" of producing the documents twice. General Tire is essentially trying to use the fact that Kepple and Benson were represented by the same attorney to its advantage.

■ Next, General Tire contends that there was no evidence in the record showing that the *Benson* documents were "court records." The record also does not support this contention. At the conclusion of the 76a hearing, the parties agreed to stipulate that the *Benson* documents fell into the same seven categories as the remainder of the documents and that the testimony about the *Benson* documents would be essentially the same as the evidence already presented. Thus, the evidence relied on in support of the trial court's finding that documents were "court records" discussed in point of error two, also supports the trial court's finding that the *Benson* documents were "court records." General Tire's fifth point of error is overruled.[2]

■ In its final point of error, General Tire contends that rule 76a is unconstitutionally vague. A statute is fatally vague when persons regulated by it are exposed to some risk or detriment without fair warning of the nature of the proscribed conduct. *Texas Liquor Control Bd. v. Attic Club, Inc.,* 457 S.W.2d 41, 45 (Tex.1970); *City of Webster v. Signad, Inc.,* 682 S.W.2d 644, 646 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). A due process violation only occurs when a required course of conduct is stated in terms so vague that people of common intelligence must guess at what is required.

---

**2.** Also in support of this point of error, General Tire urges that the court was without jurisdiction because the *Benson* documents were not included in the notice of 76a hearing. Much of the confusion over the *Benson* documents results from General Tire's motion for protection or sealing. It moved to protect or seal the documents that fell into the seven categories without further description or limitation. Numerous times throughout the hearing, the court and trial counsel discussed what documents were covered by the motion and notice. For similar reasons as those discussed in response to General Tire's contention that the *Benson* documents were not court records, we find that the notice was sufficient to confer jurisdiction over the *Benson* documents.

*City of Webster*, 682 S.W.2d at 646. The statute must convey a sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. *Pennington v. Singleton*, 606 S.W.2d 682, 689 (Tex.1980). To be void for vagueness, a statute must be so vague and indefinite as really to be no standard at all. *Jones v. City of Lubbock*, 727 F.2d 364, 373 (5th Cir.1984). Vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in light of the facts of the individual case. *United States v. Mazurie*, 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975).

■■■ General Tire urges that the "probable adverse effect" portion of the rule's definition of "court records" is analogous to the definition of "historical interest" in *Texas Antiquities Committee v. Dallas County Community College District*, 554 S.W.2d 924 (Tex.1977) (plurality opinion). In that case, Dallas Community College proposed to demolish three buildings and erect new facilities in their place. The Antiquities Committee attempted to block these plans by refusing to issue a committee order denying a permit to demolish the buildings. The supreme court initially noted that the community college did not need the committee's permission to demolish the building because the committee had not designated the buildings as a "State Archaeological Landmark." *Id.* at 926. The court then affirmed the judgment of the trial court that a section of Antiquities Code was unconstitutionally vague and unconstitutional as applied. *Id.* at 926–31.[3] We, however, do not find "probable adverse effect" similarly vague. As the supreme court stated:

> There has been called to our attention no case in Texas or elsewhere in which the powers of a state board are more vaguely expressed or less predictable than those permitted by the phrase in question. The word "buildings" comprehends all structures; "historical" includes all of the past; "interest" ranges broadly from public to

private concerns and embraces fads and ephemeral fascinations. All unrestorable structures ordinarily hold some nostalgic tug upon someone and may all qualify as "buildings ... of historical ... interest." *Id.* at 927. On the other hand, "probable," "adverse" and "effect" are fairly limited. "Probable" means likely or having the appearance of truth or more evidence for than against. "Adverse" means opposed or contrary and "effect" means to do, produce, make or execute. BLACK'S LAW DICTIONARY 53, 514, 1201 (6th ed. 1990). Thus, when read together, "probable adverse effect" in rule 76a means likely to produce a result contrary or opposed to the general public health and safety. Numerous trial and appellate courts have applied the standard without difficulty in determining its meaning and applicability. *See, e.g., Chandler v. Hyundai Motor Co.*, 829 S.W.2d 774, 775 (Tex.1992) (per curiam); *Upjohn III*, 906 S.W.2d at 95; *Benson*, 846 S.W.2d at 491; *Boardman*, 872 S.W.2d at 299. People of common intelligence are not forced to guess at what the terms mean.

■■■ Moreover, General Tire's interest in its trade secrets is not a constitutionally protected property interest in Texas. Property interests protected by the Constitution are created by state law. *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 998–1000, 104 S.Ct. 2862, 2870–71, 81 L.Ed.2d 815 (1984). While Texas law treats trade secrets as property in some contexts, they have not been classified as property for the purposes of the taking clause. *See Garcia v. Peeples*, 734 S.W.2d 343, 348 n. 4 (Tex.1987); *Doggett, supra,* at 675; *see also* U.S. CONST. amend. XIV; TEX. CONST. art. I, § 19.

Because we do not believe "probable adverse effect" is unconstitutionally vague, and we do not believe that General Tire's trade secrets are constitutionally protected, we overrule General Tire's sixth point of error.

The judgment of the trial court is affirmed.

---

3. Because the supreme court determined that the community college did not need the committee's permission to demolish the buildings, the final five pages of the court's opinion are arguably dicta. In addition, a majority of the court did not agree that the case was properly determined on constitutional grounds. *See Texas Antiquities*, 554 S.W.2d at 931–35, (Greenhill, C.J., concurring, and Denton, J., dissenting).

EDELMAN, Justice, dissenting on motion for rehearing.

General Tire seeks to protect discovery information which it produced, but considers confidential and proprietary, from disclosure to competitors. However, there was evidence in this case that some of this information related to safety considerations, and, thus, that it constituted "court records" for purposes of Rule 76a(2)(c). Moreover, in the sense that competitors would need court approval to gain access to the information, General Tire's proposed restriction on disclosure arguably constituted "sealing" for purposes of Rule 76a. Thus, Rule 76a was deemed to be applicable and to prevent those "court records" from being "sealed" in this manner.

Under this interpretation of Rule 76a, a defendant would appear to have no means to protect its confidential discovery information from disclosure to competitors if the information relates to safety considerations. This is an unnecessarily broad and harsh interpretation of Rule 76a. I would instead hold that restricting disclosure of a defendant's discovery information to competitors does not amount to "sealing" for purposes of Rule 76a, and would grant rehearing, reverse the trial court's judgment, and remand this case for entry of such a protective order Rule 166b(5)(c).