**Ira TATE and Lucille Tate, Appellants,**

v.

**COMMODORE COUNTY MUTUAL INSURANCE COMPANY,**
**Appellee.**

No. 05–88–00643–CV.

Court of Appeals of Texas,
Dallas.

March 1, 1989.

Rehearing Denied April 7, 1989.

Gary L. Johnson, Dallas, for appellants.

Elizabeth L. Phifer, Dallas, for appellee.

Before WHITHAM, BAKER and THOMAS, JJ.

WHITHAM, Justice.

The trial court imposed abuse of discovery sanctions upon the appellant-plaintiffs, Ira Tate and Lucille Tate, in the form of striking the Tates' pleadings and thereafter entering an order of dismissal with prejudice in favor of the appellee-defendant, Commodore County Mutual Insurance Company. The dispute centers on the trial court's order requiring the Tates to produce their sole interrogatory-designated expert witness for deposition. The Tates insist that the nonparty witness was not an agent or employee subject to their control. Under the facts of the present case, we conclude that the trial court did not abuse its discretion in ordering the witness produced, in imposing sanctions for failure to produce, and in dismissing the Tates' cause with prejudice. Further, we conclude that the trial court's actions did not deprive the Tates of due process. Accordingly, we affirm.

At oral argument, both parties agreed that the only issue for trial on the merits was the fair market value of the Tates' stolen truck under a policy of insurance covering the truck and issued by the insurance company. On February 6, 1987, the Tates filed suit against the insurance company alleging breach of an insurance contract and violations of the Texas Insurance Code. The insurance company answered on March 3, 1987, and discovery proceeded. On March 26, 1987, the insurance company forwarded to the Tates a request for production, inspection and copying of documents and other things, and interrogatories. Though the production request was timely answered by the Tates, the interrogatories were not. The Tates filed no objections to the interrogatories. On July 15, 1987, the insurance company filed a motion for sanctions to obtain answers to the interrogatories. No hearing was held on the motion as the Tates complied with the discovery request on the date of the hearing, August 7, 1987. On September 9, 1987, the

insurance company served a second set of interrogatories on the Tates. The Tates failed to timely answer these interrogatories and filed no objections to these interrogatories. On November 30, 1987, the insurance company filed a motion to compel answers to its second set of interrogatories. No hearing was held on the motion as the Tates complied with the discovery request prior to the January 15, 1988 hearing. In response to the insurance company's first set of interrogatories, the Tates named Sunday Sides as an expert witness regarding the fair market value of the stolen truck. On January 4, 1988, the insurance company noticed Sides for a deposition on January 11, 1988. On January 11, 1988, Sides's deposition was reset by agreement to February 26, 1988. On February 26, 1988, Sides failed to appear for his deposition. Appellants' attorney advised appellee's attorney that the fault lay with him as he did "not have an opportunity to get a hold of Mr. Sides." On March 8, 1988, the insurance company filed its motion for sanctions and requested that the trial court strike the Tates' pleading, or in the alternative, deny the Tates the right to call at time of trial any expert regarding the fair market value of the truck. The trial court heard the motion on April 15, 1988. As of that date, the Tates had filed no response to the motion for sanctions. However, the Tates' counsel was present at the hearing. At the April 15, 1988 hearing, the trial court ordered the Tates to produce Sides for a deposition prior to the date of the trial setting on April 26, 1988, or risk the sanctions requested in the insurance company's March 8, 1988 motion. (The April 15, 1988 order appears in our record as a docket sheet entry.) On April 22, 1988, the insurance company filed its amended motion for sanctions as Sides failed to appear for a deposition noticed for April 18, 1988. On April 26, 1988, both parties appeared before the trial court for hearing on the insurance company's amended motion for sanctions. The trial court granted sanctions in the form of striking the Tates' pleadings due to the Tates' failure to comply with the trial court's April 15, 1988 order to produce Sides for deposi-

tion. Subsequently, the trial court entered an order of dismissal with prejudice on May 10, 1988.

At the outset, we face a technical matter that we must address before reaching the real dispute between the parties. We address this technical matter out of an abundance of precaution in light of a sentence found in the Tates' brief. We quote that sentence shortly. On our record, the trial court's April 15, 1988 order was not reduced to writing by the trial court and entered of record. Indeed, the Tates' brief tells us that "[n]o order [of April 15, 1988] was prepared or signed pursuant to the trial court's apparent ruling." In general, orders of the trial court to be effectual must be entered of record. *Manoogian v. Lake Forest Corp.*, 652 S.W.2d 816, 819 (Tex.App.—Austin 1983, writ ref'd n.r.e.). Moreover, the docket sheet cannot stand as an order or substitute for such record. *Harris County Welfare Unit v. Caloudas*, 590 S.W.2d 596, 598 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ). Indeed, a court's docket notation dated 7–27–72 which recites: "Bill of Review granted and new trial granted as to property rights only" has no legal effect, because it is undisputed that said docket notation was never made a part of the court's minutes, and no formal order was ever entered by the trial court pursuant thereto. Any order or judgment to be effective must be entered of record. *Kocman v. Kocman*, 581 S.W.2d 516, 518 (Tex.Civ.App.—Waco 1979, no writ). Nevertheless, we conclude that in the present case we need not hold the trial court's April 15, 1988 order to be ineffective because not entered of record. Furthermore, we conclude that we need not hold that the docket sheet cannot stand as an order or substitute for such record. We reach these conclusions because whether the April 15, 1988 order was entered of record is a nonissue in the present case. We treat the matter as a nonissue for two reasons. First, the Tates do not complain that the April 15, 1988 docket notation was never a part of the trial court's minutes and do not complain that no formal written order was ever entered by the trial court of

record. All that the Tates say about the matter is the one sentence quoted above from their brief "[n]o order [of April 15, 1988] was prepared or signed pursuant to the trial court's apparent ruling." Nowhere do the Tates argue that want of an order of record denies the trial court the right to impose the sanctions in question. Second, at oral argument, the Tates conceded that what the trial court pronounced on April 15, 1988, "was an order." Consequently, we conclude that the fact that the April 15, 1988 order was not reduced to writing by the trial court and entered of record does not destroy the effectiveness of the order. It follows, therefore, that the want of an order of record does not deny the trial court the right to impose the sanctions in question. Thus, we return to matters in controversy.

■ All parties agree that the issue centers on the trial court's April 15, 1988 order that the Tates produce their interrogatory-designated expert witness for a deposition. In their first point of error, the Tates contend that the trial court abused its discretion in ordering them to produce a nonparty witness for deposition who was not an agent or employee subject to their control. In their second point of error, the Tates contend that the trial court abused its discretion in granting the insurance company's motion for sanctions and entering an order dismissing their cause of action with prejudice. The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action. Rather, it is a question of whether the court acted without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985) (nonparty defendant-employee fact witnesses were noticed for depositions but failed to appear.) (Held that trial court had authority to strike answer pursuant to then Rule 215a—now incorporated into Rule 215). Another way of stating the test is whether the act was arbitrary or unreasonable. *Downer*, 701 S.W. 2d at 242. The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Downer*, 701 S.W.2d at 242. To determine the trial judge's guiding rules and principles in imposing sanctions for discovery abuse, we must look to the Texas Rules of Civil Procedure as promulgated and amended by the Supreme Court as well as the decisions of appellate courts of this State and of the United States. *Downer*, 701 S.W.2d at 242. The Texas Rules of Civil Procedure pertaining to discovery and sanctions for noncompliance have been amended several times, culminating in Rule 215a as it existed at the time *Downer* came to trial, and now embodied in Rule 215. The use of sanctions by trial courts to prevent discovery abuse has developed steadily over the past several years. These changes reflect the continuing pattern both to broaden the discovery process and to encourage sanctions for failure to comply. *Downer*, 701 S.W.2d at 242. Indeed, use of sanctions are approved not only to assure compliance with the discovery process but also to deter those who might be tempted to abuse discovery in the absence of a deterrent. *See Downer*, 701 S.W.2d at 242. Furthermore, trial courts are encouraged to use sanctions to the degree necessary to assure compliance with discovery procedures and deter abuse of the process. *Downer*, 701 S.W.2d at 242. Thus, the Supreme Court has told us in no uncertain terms that the trial court is to be given the broadest discretion in imposing sanctions for discovery abuse. *Chemical Exchange Indus. v. Vasquez*, 709 S.W.2d 257, 260 (Tex.App.—Houston [14th Dist.]), *rev'd in part on other grounds*, 721 S.W.2d 284 (Tex.1986). This is the case where the sanction is harsh as is the case of dismissal of the cause of action. *See Chemical Exchange*, 709 S.W. 2d at 260.

■ Relying upon various Texas rules of civil procedure, including Rule 215(2), the Tates insist that the trial court abused its discretion in ordering them on April 15, 1988, to produce nonparty Sides for deposition because Sides was not an agent or employee subject to their control. On the

other hand, the insurance company asserts that under the facts of the present case, the focus should be on Rule 215(3) which provides that "[i]f the court finds a party is abusing the discovery process in ... resisting discovery ... the court ... may impose any sanction authorized by paragraphs (1), (2), (3), (4), (5) and (8) of paragraph 2b of this rule." Subparagraph (5) of Rule 215(2)(b) allows the trial court to strike the abusing party's pleadings and dismiss the abusing party's action with prejudice. Hence, the insurance company argues that there is no need to address whether Sides was a party or an agent or employee subject to the Tates' control. The insurance company contends that there is no need to address the issue because the record reflects that the Tates have a case history of abusing the discovery process in resisting discovery and, therefore, were properly sanctioned by the trial court by the dismissal of their cause of action with prejudice.

In support of its contention, the insurance company points out that on two prior occasions it was forced to file motions for sanctions to obtain the Tates' compliance with unobjected-to interrogatory discovery requests. In addition, the insurance company urges that, while the Tates' counsel appeared cooperative as to producing Sides for deposition, Sides failed to appear for the reset deposition of February 26, 1988, because of the admitted fault of the Tates' counsel. This brings us to the proceedings in the failed deposition of February 26, 1988. The record of the proceedings are before us as an unchallenged exhibit to the insurance company's motion for sanctions pertaining to Sides's deposition. To demonstrate the asserted admitted fault of the Tates' counsel in failing to produce Sides for the reset deposition of February 26, 1988, the insurance company points to the explanation given by the Tates' counsel in the deposition proceedings that he did "not have an opportunity to get a hold of Mr. Sides." Indeed, the proceedings in the failed deposition of February 26, 1988, reflect that the Tates' counsel, in response to the insurance company's counsel's remarks on the record, went on to state "I told [insurance company's counsel] that we

would be glad to make Mr. Sides available at her office at a mutually convenient time." Therefore, we conclude that the Tates undertook the responsibility of producing Sides for deposition. Consequently, we conclude further that it thereby became immaterial whether Sides was an agent or employee subject to the Tates' control. We reach this conclusion because the Tates in effect represented to the insurance company that Sides was subject to their control and could be produced for deposition. Furthermore, we note that the Tates filed no response to the insurance company's motion for sanctions heard on April 15, 1988, which resulted in the trial court's order of that date requiring the Tates to produce Sides for deposition prior to the April 26, 1988, trial date. Hence, on April 15, 1988, the trial court proceeded on the basis that the Tates made no objection to producing Sides for deposition and advanced no reason why they could not do so. In this connection, we note that it was not until April 26, 1988, that the Tates filed a response to the insurance company's motion for sanctions pertaining to Sides's deposition and presented by affidavit and counsel's testimony their position as to production of Sides for deposition.

This affidavit and testimony sought to show that on previous occasions the Tates' counsel had advised prior attorneys in defense counsel's law firm handling this case that the insurance company needed to subpoena Sides because Sides was not under the Tates' control, was not a voluntary witness, and "may not be very cooperative." We conclude that we need not address the merits of the Tates' response to the insurance company's motion for sanctions for two reasons. First, the affidavit and testimony came too late. We reason that this affidavit and testimony should have been received by the trial court on April 15, 1988; not on the April 26, 1988 trial date. We conclude that by standing silent on April 15, 1988, the Tates' counsel led the trial court to believe that the Tates would produce Sides for deposition. Again we note the record of the Tates' counsel's remark on the failed deposition proceedings

of February 26, 1988, to wit: "I told [insurance company's counsel] that we would be glad to make Mr. Sides available to her office at a mutually convenient time." Second, the trial court might not have credited the affidavit and testimony. We conclude that the April 26, 1988 hearing on the motion for sanctions was akin to a nonjury trial. In a nonjury case, the trial court is the judge of the credibility of the witnesses and of the weight to be given their testimony, since he has the opportunity to observe the demeanor of the witnesses on the stand and he may believe all, none, or part of the witnesses' testimony. The trial court's findings of fact will not be disturbed on appeal if supported by any evidence of probative force. *Fortner v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 687 S.W.2d 8, 12 (Tex.App.—Dallas 1984, writ ref'd n.r.e.). The qualifications and credibility of witnesses are matters to be evaluated by the fact finder. *Great American Insurance Co. v. Murray,* 437 S.W.2d 264 (Tex.1969). In a nonjury trial the judge is the trier of fact and it is his prerogative and responsibility to weigh the credibility and the proof of the evidence. *Bormaster v. Henderson,* 624 S.W.2d 655, 659 (Tex. App.—Houston [14th Dist.] 1981, no writ).

■ In the present case, the trial court's case file reflected that the Tates' actions with respect to interrogatory-discovery forced the insurance company to file two motions for sanctions. In addition, the trial court's case file reflected that the Tates undertook to produce Sides for deposition and failed to do so. Indeed, when on April 15, 1988, the trial court ordered the Tates to produce Sides for deposition, the Tates' counsel, on our record, stood silent before the trial court and made no oral or written response to the motion for sanctions then before the court. We know that the Tates' counsel was present at the April 15, 1988 hearing because he so testified during his testimony given at the April 26, 1988 hearing at which the trial court struck the Tates' pleadings. Moreover, at the April 26, 1988 hearing the Tates' counsel stated that the Tates had on that day filed their response to the insurance company's motion for sanctions with counsel's affidavit

attached. Therefore, under the facts of the present case, we conclude that the record contains no indication that on April 15, 1988, the trial court was capricious, arbitrary, or unreasonable in ordering the Tates to produce Sides for deposition prior to April 26, 1988. We reach this conclusion because the trial court might well have found that the Tates had abused the discovery process in resisting discovery. In light of the above, we conclude that the provisions of Rule 215(3) control disposition of the present case. Therefore, the trial court was authorized to strike the Tates' trial pleadings and to dismiss their action with prejudice under Rule 215(2)(b)(5). Moreover, on this record we cannot say that the trial court abused its discretion in ordering the Tates to produce a nonparty witness for deposition who was not an agent or employee subject to the control of the Tates. We overrule the Tates' first point of error. Furthermore, on this record we cannot say that the trial court abused its discretion in granting the insurance company's motion for sanctions and entering an order dismissing the Tates' cause of action with prejudice. We overrule the Tates' second point of error. Consequently, we hold that there was no abuse of discretion in the application of the sanction rule in the present case.

In overruling the Tates' first and second points of error, we are not to be read as holding that litigants are obligated to produce for deposition nonparty discovery-designated expert witnesses who are not agents or employees subject to the control of the designating party. We emphasize that our disposition of the present case is based on the specific facts and circumstances before us. In the present case, a litigant's resistance to discovery sought brought the ultimate sanction; not the posture of the discovery-designated expert witness. Moreover, we express no opinion of our views on the trial court's imposition of the ultimate sanction other than our holding that there was no abuse of discretion in the application of the sanction rule. In this connection, we are mindful of the admonition that the mere fact that a trial judge

may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Downer*, 701 S.W.2d at 242. We are mindful also that the trial court may have imposed the ultimate sanction to assure compliance with the discovery process in that court and to deter litigants appearing in that court who might be tempted to abuse discovery in the absence of a sanction. *See Downer*, 701 S.W.2d at 242. As did our sister court of appeals, we read *Downer* to tell us in no uncertain terms that the trial court is to be given the broadest discretion in imposing sanctions for discovery abuse. *See Vasquez*, 709 S.W.2d at 260.

As will be seen, our holding that there is no abuse of discretion in the application of the sanction rule in the present case is important to our disposition of the Tates' third point of error. In their third point of error, the Tates contend that the trial court denied them due process by dismissing their cause of action with prejudice. The Tates argue that dismissal of their cause of action with prejudice because of their inability to produce for deposition a nonparty, nonemployee, nonagent witness deprives them of their right to due process guaranteed by the Fourteenth Amendment of the United States Constitution as well as Article 1, Section 19 of the Texas Constitution. Citing Kilgarlin and Jackson, *Sanctions for Discovery Abuse Under New Rule 215*, 15 ST. MARY'S L.J. 767 (1984) [Hereinafter *Sanctions for Discovery Abuse*], the Tates maintain that examination of the sanctions authorized by Rule 215(2)(b) must be made with due process concerns in mind. The Tates assert that whether the remedy for the subject discovery abuse is tailored to redress the resulting prejudice to the other party is a due process concern. Again, relying upon *Sanctions for Discovery Abuse*, the Tates insist that, consistent with due process requirements, ultimate sanctions, such as imposed in the present case, cannot be imposed unless the failure to make discovery is willful, in bad faith, or due to some fault of the disobedient party. We conclude that reasoning of the United States Supreme Court is instructive and dispositive of the Tates' contentions. It does not violate due process for a state court to strike the answer and render a default judgment against a defendant who failed to comply with a pretrial discovery order. *See Hammond Packing Co. v. Arkansas*, 212 U.S. 322, 353, 29 S.Ct. 370, 381, 53 L.Ed. 530 (1909); *Insurance Corp. of Ireland v. Compagnie Des Bauxites*, 456 U.S. 694, 705, 102 S.Ct. 2099, 2105, 72 L.Ed.2d 492 (1982). Such a rule is permissible as an expression of the undoubted right of the lawmaking power to create a presumption of fact as to the bad faith and untruth of an answer begotten from the suppression or failure to produce the proof ordered. *Insurance Corp. of Ireland*, 456 U.S. at 705, 102 S.Ct. at 2105, citing *Hammond Packing*. Thus, the preservation of due process was secured by the presumption that the refusal to produce evidence material to the administration of due process was but an admission of the want of merit in the asserted defense. *Insurance Corp. of Ireland*, 456 U.S. at 705, 102 S.Ct. at 2105. Due process is violated only if the behavior of the defendant will not support the *Hammond Packing* presumption. *Insurance Corp. of Ireland*, 456 U.S. at 706, 102 S.Ct. at 2106. A proper application of a sanction rule will, as a matter of law, support the *Hammond Packing* presumption. *See Insurance Corp. of Ireland*, 456 U.S. at 706, 102 S.Ct. at 2106. If there is no abuse of discretion in the application of the sanction rule, then the sanction is nothing more than the invocation of a legal presumption, or what is the same thing, the finding of a constructive waiver. *See Insurance Corp. of Ireland*, 456 U.S. at 706, 102 S.Ct. at 2106.

In *Insurance Corp. of Ireland*, the Court enunciated these principles in the context of sanctions imposed upon an errant state court defendant suffering default judgment as the ultimate sanction. In the present case, we apply the principles but converted to sanctions imposed upon errant state court plaintiffs suffering a dismissal with prejudice as the ultimate sanction. We conclude, therefore, that it does not violate due process for a state court to strike the trial pleadings of the

plaintiff and enter an order dismissing the plaintiff's cause of action with prejudice against a plaintiff who failed to comply with a discovery order. We conclude further that such a rule is permissible as the expression of the undoubted right of the Texas Supreme Court to create a presumption of fact as to the bad faith and untruth of a plaintiff's trial pleading begotten from the suppression or failure to produce the proof ordered. We reach this conclusion because the preservation of due process was secured by the presumption that the refusal to produce evidence material to the administration of due process was but an admission of the want of merit in the asserted cause of action. We conclude further that in the present case the Tates' behavior supports this presumption. Indeed, the Tates' refusal to produce Sides was material to the administration of due process. Sides was the Tates' only designated expert as to the one factual dispute between the parties. We have concluded earlier that there has been no abuse of discretion in the application of the sanction rule. Consequently, we conclude that in the present case this proper application of the discovery rule supports the presumption as a matter of law. The presumption existing as a matter of law, we conclude that we must presume the bad faith and untruth of the Tates' trial pleadings begotten from the suppression or failure to produce Sides' deposition testimony. As to their federal claim, we conclude further, therefore, that the trial court did not deny the Tates due process by dismissing their cause of action with prejudice. As to their state claim, we see no reason not to interpret the Texas Constitution as we have the United States Constitution. Consequently, it follows that the trial court did not deprive the Tates of their right to due process guaranteed by the Fourteenth Amendment of the United States Constitution and Article 1, Section 19 of the Texas Constitution. We overrule the Tates' third point of error.

Affirmed.