In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-09-00074-CV

                                                ______________________________

 

 

                                   MIKE NELSON AND BIG
WOODS

LAND DEVELOPMENT, INC.,
Appellants

 

                                                                V.

 

   BIG WOODS SPRINGS IMPROVEMENT ASSOCIATION, INC., Appellee

 

 

                                                                                                  


 

 

                                      On Appeal from the 402nd
Judicial District Court

                                                             Wood County, Texas

                                                          Trial Court
No. 2007-391

 

                                                                                                   

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                              Memorandum Opinion by Justice Carter








                                                     MEMORANDUM 
OPINION

 

            This
appeal arises out of declaratory judgments entered by a trial court in a suit
resulting from an attempted takeover of a homeowner’s association, Big Woods
Springs Improvement Association, Inc. (Association), by purported new
members.  On appeal, the trial court’s
challenged declarations include (1) that the Association president had the
right to adjourn the annual meeting, thus postponing election of board members and
thereby preventing such takeover, and (2) that green areas were property
of the Association.  Also challenged is
the trial court’s grant of attorney’s fees to the Association.  We affirm the trial court’s judgment.  

I.          Factual and Procedural History 

            The
procedure for the Association annual meeting was clearly set forth in its
bylaws.  The Association provides notice
of the meeting “[n]ot less than ten days prior to a Meeting,” mails a “Ballot
with names of nominees for the Board of Directors . . . with notice of Annual
Meeting to each Association Member in good standing and qualified to vote,” a
quorum of ten percent of the members in good standing who are qualified to vote
must be present, “Members are entitled to one vote for each annual assessment
fee (dues) paid,” and the “Ballot is the only method of voting for Officers.”  

            Vera
Hall, president of the board of directors of the Association, sent each
existing member who had a right to vote their notice of election of board
members, along with a ballot nominating four people for board election.  The ballot stated that it “may be brought to
the Annual Meeting at the clubhouse on June 3, 2007, or mailed to the above
address.  IF MAILED, BALLOT MUST BE
RECEIVED BY JUNE 2, 2007 . . . .”  Hall
called and presided over the Association annual meeting on June 3, 2007.  Michael Nelson entered with Michael English,
Teresa Reynolds, Tim Siler, Cathy Hulsey, and others, and placed a video camera
in the back of the meeting room. 

            At
the meeting, Hall was handed a June 2, 2007, Big Woods Land Development, Inc.
(Development)[1]
letter notifying the Association that it had sold 288 lots, both platted and
unplatted, to new purchasers who allegedly took possession of the property on
June 1––two days prior to the scheduled Association annual meeting.  The Development attached a list of the
purported new owners––which demonstrated 174 of the sales were to Nelson.  The list also reflected that a 1/12th payment
of the Association annual fee of $180.00 had been made by each new owner.  Hall was presented with a check for $4,320.00,
which totalled one month’s dues for 288 lots, and was asked that all new
members be given the right to vote.[2]  Other than the Development letter, Hall was
not presented with any other proof of ownership of the lots through deed,
contract for sale, or otherwise.  

            Since
it was unclear whether votes from the purported new members should be counted,
the meeting was adjourned “following a motion second and vote.”  Hall confirmed that none of the purported new
members had submitted an application for membership as required by the
bylaws.  Nevertheless, after the meeting
was adjourned and the existing members left the room, Nelson reconvened the
meeting with purported new members, despite the bylaw declaration that “[t]he
President . . . presides at Meetings.” 
Nelson conducted the meeting on his own for the purpose of his election
as president of the board.  Although Hall
did not send any purported new members a ballot, 288 new ballots were signed,
all dated between June 1–3.  Nelson,
English, and Reynolds were selected as board members through write-in votes on
these new ballots.[3]  The trio then went to the bank and obtained
control over the Association bank account. 
They also passed a revitalization mandate preventing Hall, her husband,
and several other current and proposed board members from “holding any current
or future office in [the Association].”  


            The
Association sued Nelson, English, Reynolds, Siler, Hulsey[4] (Individual
Defendants), and the Development[5]
(collectively referred to as the Nelson Group) and sought injunctive relief
preventing them from “holding themselves out as being directors and/or officers
of” the Association and from exercising control over Association property and
assets, including the Association bank account.[6]  Attached to the Association petition was a
2007 judgment in a previous case against Nelson’s wife, Rebecca, and Big Woods
Springs, Inc., in which the same trial court previously made the following
rulings: 

The
operative deed restrictions governing the Big Woods Spring [sic] subdivision in
Wood County, Texas, apply only to platted lots and only owners of lots covered
by the restrictions may vote on proposed amendments to the restrictions.

 

            . . . .

 

Big
Wood [sic] Springs Improvement Association, Inc. is the only entity currently
entitled to conduct business as the homeowners association for the Big Woods
Springs subdivision. 

 

It is undisputed that only twenty of the lots
Nelson purchased were platted lots.  Yet,
he attempted to submit over 174 votes in violation of the court’s 2007
declaratory judgment against his wife.  

            After
the trial court issued a temporary injunction in this cause in the Association’s
favor, the Nelson Group filed a counterclaim for declaratory judgment against
the Association asking the court to declare that (1) the Association’s actions
were contrary to the court’s 2007 judgment which provided that owners of lots
covered by restrictions could vote; (2) the June 3, 2007, meeting was not
adjourned but was continued that day by the Nelson Group; (3) the action of the
Nelson Group was lawful; (4) all actions taken by the Association after June 3
were unlawful; and (5)  the Nelsons are members of the Association.[7]  The Nelson Group sought attorney’s fees.  They also asked the court to vacate the
temporary injunction, which denied them access to Association grounds and
property, and issue an injunction preventing the Association from denying the
Nelson Group their property rights and enjoining the June 1, 2007, membership
meeting, balloting, and election of officers and directors.  

            The
Nelson Group argued in its counterclaim petition that “[t]he former procedure
requiring new member application to be approved prior to new members being
allowed to vote had been abandoned since at least the mid-1990’s.”  In reply, the Association amended its
petition to include a claim for declaratory judgment that the 1995 deed
restrictions applied to the subdivision. 
Additional facts occurring after initiation of suit, including the Development’s
billing of the Association for use of the community mailbox, and their claim of
ownership of the Association’s green area, resulted in the Association seeking
further declaratory relief and attorney’s fees under the Uniform Declaratory
Judgments Act.  

            The
trial court issued judgment declaring that:  Hall had the authority to adjourn the June 3,
2007, annual meeting; the 288 contracts for sale were not for purposes of lot
ownership, “but were instead a scheme for winning the election of the Board of
Directors”; the 1995 deed restrictions[8] were
in full force and effect; and the Association was the owner of all green areas,
picnic areas, swimming piers, boat ramps, mailboxes, and clubhouses and did not
owe any fees to the Development from their use.  The court further enjoined the Nelson Group
from holding themselves out as Association directors and/or exercising any
control over the Association’s property or assets, including bank
accounts.  It awarded the Association
$23,400.00 and an additional $5,000.00, conditioned upon successful
appeal.  

            Only
Nelson and the Development appeal the trial court’s ruling. 

II.        Trial Court Properly Granted Declaratory
Judgment 

            “A person interested under a deed, will,
written contract, or other writings constituting a contract . . . may have
determined any question of construction or validity arising under the instrument,
. . . and obtain a declaration of rights, status, or other legal relations
thereunder.”  Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a) (Vernon
2008).  We review declaratory judgments
in the same manner as “other orders, judgments, and decrees.”  Tex.
Civ. Prac. & Rem. Code Ann. § 37.010 (Vernon 2008); Mid-Century Ins. Co. of Tex. v. Childs,
15 S.W.3d 187, 188 (Tex. App.––Texarkana 2000, no pet.).  In this case, findings of fact and
conclusions of law were not requested or made. 
Thus, we must uphold the trial court’s judgment if it can be sustained
upon any legal theory supported by the evidence.  Childs,
15 S.W.3d at 188 (citing In re W.E.R.,
699 S.W.2d 716, 717 (Tex. 1984)); Rosen
v. Wells Fargo Bank Tex., N.A., 114 S.W.3d 145, 148–49 (Tex. App.––Austin
2003, no pet.). 

A.        The Purported New Members
Were Not Entitled to Vote Pursuant to Association Bylaws

 

            Nelson
and the Development argue that the trial court “erred in finding that June 3,
2007 . . . membership election invalid.”  The trial court reasoned:  “it’s
standard practice in membership meetings in homeowners associations or
stockholders meetings, in corporations, for there to be a cutoff date for
people who are expecting to vote to have provided the information necessary to
the people who are verifying it.”[9]  

            The
trial court found that Hall

had
authority to recess the meeting.  She was
the presiding officer, and as such, she has the authority to recess it to take
some time to look at the -- as to whether or not this list of posed new members
was a good list and whether these people should be able to vote.  There were issues as to -- there were whole
series of issues on that including whether or not the lots were platted or not
platted.[10]

 

            With
questions of new owner membership in the air, Hall could call for a vote to
adjourn the meeting.  The bylaws state
that Robert’s Rules of Order govern the meeting and voting process where not
otherwise specified.  Article III of
these rules provide that a motion to adjourn takes precedence over all other
motions, is not debatable, and will carry by majority vote.  Hall testified that the meeting was adjourned
“following a motion second and vote” by all present, including the purported
new members.[11]  A witness for the Nelson Group
comprised a list of those who voted to adjourn and those who did not.  According to this witness, fourteen people
voted to adjourn and twenty people voted against, an assertion with which the
trial court as trier of fact could have disagreed.[12]  Further, although the Association bylaws allow “[a]ny person who
is the owner of legal or equitable title in any lot or living unit or any
person who is a buyer under and pursuant to a contract for deed of any lot or
living unit which is subject to present or future assessment by the Association
. . . [to] be a Member of the Association,” the person “must submit an
Application for Association Membership to the Board of Directors prior to
obtaining ownership of any lot or living unit.” 
In order to vote, the bylaws state that the member must first pay their
annual assessment fee.  It is undisputed
that none of the purported new members filed an application for membership or
paid the full amount of the annual dues. 
They were not entitled to vote on the issue of adjournment.  Thus, the trial court’s decision that Hall
had the authority to adjourn the meeting is supported by the bylaws and other
evidence.  

            Further,
because Nelson had no authority to preside over the meeting electing new board
members, actions taken at the Nelson Group meeting, and the results following,
were invalid.  We find no error in
the court’s ruling.  See Childs, 15 S.W.3d at 188. 
We overrule the first point of error. 

            B.        The
Green Areas Belonged to the Association Pursuant to Deed

            Next,
Nelson and the Development argue that since the green areas are unplatted, they
belong to the Development and the trial court erred in holding otherwise.[13]  A 1984 deed to the Association, as well as
annual meeting minutes dating back to 2002, establish Association ownership and
control of green areas.  The deed refers
to the lake in its conveyance and states “[a]ll green areas and picnic areas
shown on all the plats of Big Woods Springs Addition referred to above are to
be conveyed herewith.[14]  All streets or roads . . . are to be conveyed
herewith.”  The minutes reflect that
Association volunteers and contractors are to mow the green areas and proposed
to block access of strangers to the boat ramp via use of a combination lock.  The bylaws also state that only members may
use the lake, park areas, dumpster, clubhouse, apartment, fishing and swimming
docks, and other Association facilities, all included within the deed to the
Association.  

            Nelson
and the Development concede on appeal that the clubhouse and lake were deeded
to the Association, but claim that the green area “between lots 520 and 521”
could not have been included in the deeds since they “were outside the plats
identified in the deeds.”  It appears
that the green area between these lots is where the community mailboxes are
located.  The Association was
given a permit in 2001 to install and use the community mailboxes.  Further, a plat referencing “green area”
adjacent to lot 520 was recorded in 1982. 
Thus, the court could determine it fell within the 1984 conveyance of “[a]ll green areas . . . shown on
all the plats of Big Woods Springs Addition.” 


            Thus,
because the trial court’s
ruling is supported by the deeds and other evidence, we must uphold its ruling
and overrule this point of error. 

III.       Alleged Error in Award
of Attorney’s Fees to Association Not Preserved

            Under
Section 37.009, a trial court may award reasonable and necessary attorney’s
fees that are “equitable and just.”  Tex. Civ. Prac. & Rem. Code Ann. §
37.009 (Vernon 2008).  The Association’s
attorney testified he billed $200.00 per hour for work that he did and $85.00
per hour for work completed by his legal assistant.  Asserting that he spent 100 hours on this
case and his legal assistant spent forty hours, the attorney asked for a total
fee of $23,400.00. 

            No
objection or argument as to the amount of legal fees charged by the Association’s
attorney was lodged until appeal.  First,
Nelson and the Development state “there is no evidence whatsoever that the fees
awarded Plaintiff were reasonable or equitable and just in these circumstances.”  In order to preserve a complaint for
appellate review, a party must present a timely request, objection, or motion
to the trial court.  See Tex.
R. App. P. 33.1(a)(1).  The Nelson
Group’s counsel stated his “labors have been not as exhaustive” as the
Association’s attorney, that he did not “think that I’ve had that much time in
the case.  I’m not being paid by the
hour, and as a result, I have not kept hourly records.”  He asked the court to award $12,500.00 to
$15,000.00 in attorney’s fees “as opposed to the higher number advocated by” the
Association’s counsel.  However, the
Nelson Group’s attorney never questioned the reasonableness and necessity of
attorney’s fees.  He merely suggested
during closing argument “that each side has enough merit to its case that each
side ought to bear its own attorney’s fees.” 
We find this issue was not preserved. 
Save Our Springs Alliance, Inc. v.
Lazy Nine Mun. Util. Dist. ex rel. Bd. of Directors, 198 S.W.3d 300, 318
(Tex. App.––Texarkana 2006, pet. denied).[15]  

            Next,
Nelson and the Development argue that the attorney’s fees should have been
reduced by the amount of fees expended on issues abandoned or lost by the
Association, such that it could not be considered a prevailing party on certain
claims.[16]  No such objection was made to the trial
court.  Thus, we also conclude this
contention was not preserved.  Id.; see
also Red Rock Props. 2005, Ltd. v. Chase Home Fin., L.L.C., No.
14-08-00352-CV, 2009 WL 1795037, at *7 (Tex. App.––Houston [14th Dist.] June
25, 2009, no pet.) (mem. op.) (objection that attorney’s fees were not
segregated not preserved in trial court); Fortenberry
v. Cavanaugh, No. 03-07-00310-CV, 2008 WL 4997568, at *11 (Tex. App.––Austin
Nov. 26, 2008, pet. denied) (mem. op.) (same). 


IV.       Conclusion 

            We affirm the
trial court’s judgment. 

 

 

                                                                                    Jack
Carter

                                                                                    Justice

 

Date Submitted:          June
22, 2010

Date Decided:             June
30, 2010











[1]The
Development was owned and operated by relatives of Nelson.    

 





[2]The
Association returned the check because “[t]he persons for whom the dues are
intended are not approved members.”  





[3]Many of the ballots appear to
contain the same handwriting.  

 





[4]Hall
testified none of the Individual Defendants lived in the subdivision.  





 

[5]The
Association also sought declaratory judgment against the Development for
certain timbering operations.  The
Association was granted a nonsuit of these claims.  





 

[6]The
trial court granted a temporary injunction to this effect, which is not
addressed in this opinion.  





[7]There
is no contest that Nelson and Rebecca had owned at least one lot subject to the
Association’s deed restrictions since 1973. 
The trial court in this cause issued a temporary injunction finding that
the Nelsons were entitled to notice of membership meetings and could vote in
upcoming elections as long as they paid their yearly dues in accordance with
the deed restrictions, which were imposed after the 1974 letter stating the
Nelsons received “a life long membership . . . without payment of any
dues.”  





[8]The restrictions referenced in the
trial court’s judgment contained the following language: 

 

Each purchaser of a tract or lot in
the Subdivision must be a member of the Association.  Upon acceptance of an application for
membership in Big Woods Springs Association the simultaneous execution of a
sales contract or the acceptance of a deed, each owner shall become a member .
. . . Said membership shall be conditioned upon payment when due of such dues,
fees and maintenance charges as the Association shall find necessary . . . . 





[9]Under the Texas Business
Organizations Code governing nonprofit corporations, the record date for “determining
the owners or members” of a corporation is “the date on which: (1) notice of
the meeting is given to the owners or members entitled to notice of the meeting”
as provided by Section 6.101(d).  Tex. Bus. Orgs. Code Ann. § 6.101(d) (Vernon
2009).  The bylaws require such
notification to be mailed ten days prior to the annual meeting, suggesting that
the new owners would be cut off from membership for purpose of the annual
meeting vote.  

 





[10]The
parties spend a decent amount of time in their briefs arguing the validity or
invalidity of the sales contracts.  At the time of the annual
meeting, because the contracts for sale provided for deferred payment, none of
the purported new owners had made any payments. 
The purported contracts of sale, all signed on June 1, 2007, contained
provisions allowing the buyer to “cancel this contract without penalty within
14 days of the effective date . . . by signing and returning the attached ‘Notice
to Cancel Contract.’”  All of the
contracts were cancelled pursuant to this provision.  While the trial court found the contracts
valid, it was also led to the conclusion that the sales were for the purpose of
influencing the election.  In our
opinion, because the trial court’s ruling did not depend on the nature
of these new sales contracts, but rather on whether Hall had the authority to
adjourn the meeting and whether Nelson had the right to preside over another
meeting, we need not address this issue. 





[11]Robert’s
Rules of Order is a procedural manual guiding parliamentary process.  See Henry M. Robert, et al., Robert’s Rules of
Order, Newly Revised (10th ed. 2000).

 





[12]In
a bench trial, the court is the sole judge of the witness’ credibility and the
weight to be afforded the testimony. Moore
v. Jet Stream Invs., Ltd., No. 06-09-00106-CV, 2010 WL 2197703, at *5 (Tex.
App.––Texarkana June 3, 2010, no pet. h.) (citing Tate v. Commodore County Mut. Ins. Co., 767 S.W.2d 219, 224 (Tex.
App.––Dallas 1989, writ denied)).  The
trial court, as the fact-finder, has the right to accept or reject all or any
part of any witness’ testimony.  Id. at *5 (citing Griffin Indus., Inc. v. Honorable Thirteenth Court of Appeals, 934
S.W.2d 349, 357 (Tex. 1996)).





[13]We
note that with an exception not applicable here, a trespass to try title claim
is the exclusive method in Texas for adjudicating disputed claims of title to
real property.  See Tex. Prop. Code Ann.
§ 22.001(a) (Vernon 2000); Martin v.
Amerman, 133 S.W.3d 262, 267 (Tex. 2004); Koch v. Tex. Gen. Land Office, 273 S.W.3d 451, 455 (Tex. App.––Austin
2008, pet. filed); Glover v. Union Pac.
R.R. Co., 187 S.W.3d 201, 211 (Tex. App.––Texarkana 2006, pet. denied).
When the suit does not involve the construction or validity of deeds or other
documents of title, the suit is not one for declaratory judgment.  McRae
Exploration & Prod. Co. v. Reserve Petroleum Co., 962 S.W.2d 676, 685
(Tex. App.––Waco 1998, pet. denied).  The
situation at hand involves both the title to lands and the construction to be
placed on the deed of conveyance of part of the lands in controversy. Unlike
our recent case of Ramsey v. Grizzle,
No. 06-09-00026-CV, 2010 WL 1980247 (Tex. App.––Texarkana May 19, 2010, no
pet. h.), this issue has not been raised on appeal; accordingly, the treatment
of this matter solely as an action in declaratory judgment would be unassigned
or unpreserved error at best, something we cannot entertain.  Tex. R.
App. P. 33.1.

 





[14]The
Nelson Group points to testimony suggesting that some of the green areas “were
outside the plats identified in the deeds conveying property to [the
Association].”  These “plats” outside of
the deed referred to the area comprising the community mailbox, which the
Association was permitted to use.  





[15]The
court has discretion to award attorney’s fees in a declaratory judgment action
in an amount it determines is equitable and just.  Id. at
319.  Had this issue been preserved, the
trial court was free to determine that the Association’s attorney’s testimony
established the fees sought were equitable and just. 





[16]In
any event, an award of attorney’s fees under the Uniform Declaratory Judgments
Act “is not dependent upon a finding that the party prevailed.”  City of
The Colony v. N. Tex. Mun. Water Dist., 272 S.W.3d 699, 754 (Tex.
App.––Fort Worth 2008, pet. dism’d) (citing
Barshop v. Medina County Underground Water Conservation Dist., 925 S.W.2d
618, 637 (Tex. 1996)); Dorman v. Arnold,
932 S.W.2d 225, 229 (Tex. App.––Texarkana 1996, no writ).