*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*





# MEMORANDUM OPINION

No. 04-09-00469-CV

Nancy Ann **THORNTON**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court, Jim Wells County, Texas
Trial Court No. 7391
Honorable L. Arnoldo Saenz, Judge Presiding

Opinion by:    Rebecca Simmons, Justice

Sitting:       Karen Angelini, Justice
               Sandee Bryan Marion, Justice
               Rebecca Simmons, Justice

Delivered and Filed:  August 11, 2010

AFFIRMED

On June 22, 2009, the trial court granted a temporary ex parte protective order in favor of

James Thornton, against his daughter Appellant Nancy Thornton.[1]  After a final hearing, on July

2, 2009, the trial court granted the application for protective order.  Nancy appeals from the trial

court's order.

---

[1] Because many of the parties bear the same surname, for purposes of clarity, we refer to the parties as follows:
Nancy Thornton and James Thornton, Jr. as Nancy and James, respectively.  Additionally, we refer to James
Thornton, the applicant for the protective order, as Mr. Thornton.

**STATEMENT OF FACTS**

This case arises from a difficult family dispute between an elderly gentleman and his daughter. Because of the issues involved, a detailed discussion of the facts follows. The State, on behalf of Mr. James Thornton, sought a protective order against Mr. Thornton's daughter, Nancy Thornton. Nancy responded that her father was diagnosed with Alzheimer's in 2004, and that he was living in unsafe conditions.

At the hearing, Mr. Thornton testified that he was eighty-seven years old, and he married his current wife, Adelfa Barton, in 1997 after Nancy's mother died. Nancy lived next door to Mr. Thornton and Adelfa. Problems arose after he gave Nancy a power of attorney in order for her to purchase some property from him. Nancy used the power of attorney to withdraw funds from Mr. Thornton's bank account without his permission. Mr. Thornton subsequently requested the bank revoke the power of attorney. Mr. Thornton also testified that Nancy had the post office forward his and Adelfa's mail to Nancy's address and he had to replace his mailbox. Additionally, Nancy went to the Highway Department to take his and Adelfa's driver's licenses away, and she followed him and his wife around.

During her cross-examination of Mr. Thornton, Nancy attempted several times to ask her father about his medical condition. He adamantly denied being diagnosed with Alzheimer's and explained that, although he was recently hospitalized, it was for complications associated with gout. When presented with pictures from his residence, Mr. Thornton explained that he used a cane at the house, not a walker, and that he could maneuver without complications. Finally, he opined that his wife, Adelfa, to whom he had been married for thirteen years, took care of him, gave him his medications, and cooked his meals for him.

Adelfa testified that the original power of attorney was given to Nancy on February 13, 2006 but was subsequently revoked. She also testified to Mr. Thornton's dismay regarding numerous attempts by Nancy to interfere with her father's and Adelfa's lives, including: (1) Nancy transferred funds from Mr. Thornton's bank account to a new joint account for Mr. Thornton and Nancy resulting in bounced checks written on the old account; (2) Nancy cancelled their mail delivery and transferred it to her Corpus Christi box; (3) Nancy tried to have the Texas Department of Public Safety cancel both Adelfa's and Mr. Thornton's drivers' licenses; and (4) Nancy called Adult Protective Services regarding Adelfa's alleged abuse of Mr. Thornton, allegations which were determined unsubstantiated. Adelfa confirmed that Mr. Thornton suffered from gout and was hard of hearing, but considering his age, he was in good health. Adelfa concluded she feared Nancy's interference and stalking, which ironically was evidenced by the pictures Nancy had taken that showed she was in their home without their permission. On cross-examination, Nancy attempted to examine Adelfa regarding several documents that Adelfa alleged were never signed by Mr. Thornton, and that she had never seen.[2]

Finally, the State called James Thornton, Jr., Nancy's brother, to testify. James described Mr. Thornton and Adelfa as very happy, and he believed Adelfa took good care of his father. James confirmed that the original power of attorney, which Nancy used for the bank account and transferring the mail, was signed without Adelfa's knowledge, and many of the other documents Nancy relied upon were forged and did not contain Mr. Thornton's signature. James regarded his sister Nancy as simply "mooching" off her father and as interfering. Finally, James testified that his father, Mr. Thornton, does not have Alzheimer's and is in relatively good health.

---

[2] The documents were not admitted into evidence, but the State described the documents as purported powers of attorney to Nancy that were signed prior to Mr. Thornton's revocation of all powers of attorney in June 2009.

During her testimony, Nancy explained that Mr. Thornton was diagnosed with Alzheimer's in 2004, and that Adelfa was also in the early stages of dementia. Additionally, she opined that Adelfa was not properly feeding and medicating her father. Nancy also argued that, in February of 2006, Mr. Thornton agreed to have Nancy take over legal responsibility for him and it was agreed Adelfa's son would take over legal responsibility for her. During her testimony, Nancy mentioned a note and other powers of attorney but no copies of such documents are contained in the record. At the conclusion of the hearing, the trial court granted the protective order.

### NOTARIZED DOCUMENTS EXCLUDED FROM THE RECORD

In her first issue on appeal, Nancy complains that the trial court erroneously excluded a power of attorney recorded June 10, 2009 and other documents from evidence.[3] There is no further identification of the documents, nor are they included in the record. However, from the reporter's record, Nancy's complaint appears to relate to a note of some type and other powers of attorney.

### A. Standard of Review

The decision whether to admit evidence lies within the sound discretion of the trial court. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995); *McEwen v. Wal-Mart Stores, Inc.*, 975 S.W.2d 25, 27 (Tex. App.—San Antonio 1998, pet. denied). An appellate court will not disturb the trial court's exercise of discretion absent a showing of clear abuse. *See*

---

[3] Nancy is representing herself in this appeal and her brief is less than clear in many respects. We note, as the State does in its briefing, that an appellate court reads the appellant's brief in light of Texas Rule of Appellate Procedure 38.9. TEX. R. APP. P. 38.9 ("Because briefs are meant to acquaint the court with the issues in a case and to present argument that will enable the court to decide the case, substantial compliance with this rule is sufficient. . . ."); *Sheikh v. Sheikh*, 248 S.W.3d 381, 392 (Tex. App.—Houston [1st Dist.] 2007, no pet.). Accordingly, we have liberally construed Nancy's briefing.

*Robinson*, 923 S.W.2d at 558. The test for abuse of discretion is "whether the trial court acted without reference to any guiding rules or principles." *Id*.

## B. Offer of Proof

In order to determine whether the trial court abused its discretion in refusing to admit evidence, an offer or tender of the evidence must be made. "To preserve error concerning the exclusion of evidence, the complaining party must actually offer the evidence and secure an adverse ruling from the court." *Bobbora v. Unitrin Ins. Servs.*, 255 S.W.3d 331, 334–35 (Tex. App.—Dallas 2008, no pet.) (citing *Fletcher v. Minn. Mining. & Mfg. Co.*, 57 S.W.3d 602, 607 (Tex. App.—Houston [1st Dist.] 2001, pet. denied)); *see also* TEX. R. EVID. 103(a)(2); TEX. R. APP. P. 33.1. A party's failure to demonstrate the substance of the excluded evidence results in waiver. *See Sw. Country Enters., Inc. v. Lucky Lady Oil Co.*, 991 S.W.2d 490, 494 (Tex. App.— Fort Worth 1999, pet. denied).

Even if an offer of proof had been made, without the documents we cannot ascertain the error. "Although Texas Rule of Appellate Procedure 35.3(a) places the burden to timely prepare, file, and certify the clerk's record on the trial court clerk, the appellant bears the burden to bring forward an appellate record that enables this court to determine whether the appellant's complaints constitute reversible error." *Crown Asset Mgmt., LLC v. Dunavin*, No. 05-07-01367-CV, 2009 WL 2837754 (Tex. App.—Dallas Sept. 4, 2009, no pet.) (citations omitted); *see also Enter. Leasing of Houston v. Barrios*, 156 S.W.3d 547, 549 (Tex. 2004).

Nancy attempts to assist this court by attaching documents to her brief; however, an appellate court cannot consider documents attached to briefs and must consider the case based solely upon the record filed. *WorldPeace v. Comm'n for Lawyer Discipline*, 183 S.W.3d 451, 465 n.23 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (citing *Cherqui v. Westheimer St.*

*Festival Corp.*, 116 S.W.3d 337, 342 n.2 (Tex. App.—Houston [14th Dist.] 2003, no pet.)). Thus, although Nancy sent numerous documents to this Court that were not included in the record, the documents are not a part of the appellate record and we are, therefore, unable to review Nancy's complaint. Accordingly, we conclude that the trial court did not abuse its discretion in excluding the evidence in question. *See Robinson*, 923 S.W.2d at 558.

### TRIAL COURT IMPROPERLY WEIGHED THE EVIDENCE

In her next issue on appeal, Nancy asserts the trial court erroneously gave more credibility to the State's witnesses than to her testimony.

In a nonjury trial or hearing, the trial court is the exclusive judge of the credibility of the witnesses, and the weight to be given their testimony. *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005); *Tate v. Commodore County Mut. Ins. Co.*, 767 S.W.2d 219, 224 (Tex. App.—Dallas 1989, writ denied). The trial court may believe one witness and disbelieve others, and may resolve inconsistencies in any witness's testimony. *City of Keller*, 168 S.W.3d at 819; *Tate*, 767 S.W.2d at 224. Here the testimony was conflicting concerning the health of Mr. Thornton and also the validity of certain documents. The trial court was free to make its own evaluation concerning the testimony and documents. *See Tiller v. Martinez*, 974 S.W.2d 769, 777 (Tex. App.—San Antonio 1998, pet. dism'd w.o.j.); *City of Keller*, 168 S.W.3d at 819. Without question, the trial court was in the best position to judge the witnesses' credibility and the record supports the trial court's decision to grant the protective order.

### ALLEGED BIAS OF THE TRIAL COURT

Nancy also contends the judge was biased against her as shown by his rulings. Bias, like any other form of error, must be preserved in the trial court. *See* TEX. R. APP. P. 33.1(a); *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). Nancy did not raise this issue before the

trial court as required by Tex. R. App. 33.1. *Dow Chem. Co.*, 46 S.W.3d at 241. Thus, she has waived this issue on appeal.

Even if Nancy had not waived this issue, there is no evidence of bias in the record. In *Dow Chemical Company v. Francis*, 46 S.W.3d at 240, the Texas Supreme Court considered whether the trial judge's comments constituted bias as a matter of law. The Court relied on *Liteky v. United States*, 510 U.S. 540, 555 (1994), which held that "judicial rulings alone almost never constitute a valid basis for a bias or partiality recusal motion." *Dow Chem. Co.*, 46 S.W.3d at 240 (quoting *Liteky*, 510 U.S. at 555). *Liteky* further stated that "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Liteky*, 510 U.S. at 555. "[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings . . . do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id*.

The trial judge exhibited patience and professionalism in his dealings with Nancy and the other witnesses. Based on our review of the entire record, we cannot conclude that Nancy was denied a fair trial.

## INCOMPLETE OR ALTERED RECORD

In her final point on appeal, Nancy contends that portions of the hearing were left off the tape-recording of the hearing and that "the transcript is alter[ed] from original testimonies."

Our appellate record does not contain any evidence, such as the alleged deleted section of the record, which would allow consideration or determination of this issue. Nevertheless, Nancy requests that we reverse the trial court's order based on alleged testimony not entered in the

record and not before this Court. As previously discussed, Nancy bore the burden on appeal to bring forward an appellate record to show the trial court erred in granting the protective order. Without evidence of the testimony in question, this Court cannot consider the merits of this issue. *See OAIC Commercial Assets, L.L.C. v. White*, 293 S.W.3d 883, 886 (Tex. App.—Dallas 2009, pet. denied); *see also Quorum Int'l v. Tarrant Appraisal Dist.*, 114 S.W.3d 568, 572 (Tex. App.—Fort Worth 2003, pet. denied) ("We cannot look outside the record in an effort to discover relevant facts omitted by the parties; rather, we are bound to determine this case on the record as filed."). Accordingly, in the absence of a transcription or tape of the portion of the hearing in question, we cannot conclude that the trial court abused its discretion in granting the requested protective order.

### CONCLUSION

Because Appellant Nancy Thornton failed to bring forward sufficient evidence to show that the trial court's exclusion of evidence caused the rendition of an improper judgment, we cannot say the trial court abused its discretion in excluding the evidence. Additionally, although Nancy believes the trial court was biased in favor of the State, the record does not support such allegations. Moreover, we remain mindful that, in a non-jury hearing, the trial court is the exclusive judge of the witnesses' credibility and the weight to be given their testimony. Finally, because the appellate record does not support Nancy's conclusion that the transcription of the hearing was altered or changed by any means. Accordingly, we affirm the judgment of the trial court.

Rebecca Simmons, Justice